UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASSOCIATION OF AMERICAN RAILROADS,<br><br>    Plaintiff,<br><br>    v.<br><br>DEPARTMENT OF TRANSPORTATION, *et al.*,<br><br>    Defendants. | Civil Action No. 11-1499 (JEB) |

**MEMORANDUM OPINION AND ORDER**

The present railway-regulation case against Defendants Department of Transportation and others has at last reached its terminus. Plaintiff Association of American Railroads has traveled to the Supreme Court and back down, with local stops at the D.C. Circuit each time. Both parties now ask this Court to enter judgment, but it is clear that their engines have not yet cooled, as they disagree as to its substance. While the Department believes that only a subsection of the provision at issue should be declared unconstitutional, AAR contends that this is the end of the line for the entire section. The Court ultimately sides with Plaintiff and grants it the full remedy that it seeks.

**I.    Background**

Only a brief factual recitation is necessary given the narrow question presented here. This suit involves the Passenger Rail Invest and Improvement Act of 2008 (PRIIA), Pub. L. No. 11-432, which tasked Amtrak and DOT's Federal Railroad Administration with "jointly" developing metrics and standards governing rail lines on which Amtrak and private freight companies both run their trains. See PRIIA, § 207(a) (codified at 49 U.S.C. § 24101 note). If

1

the two could not complete this task in a set timeframe, either had the option of petitioning the Department's Surface Transportation Board to appoint an arbitrator. Id. § 207(d). (The rest of § 207 also involves those metrics and standards by mandating quarterly compliance reports and requiring rail carriers to make efforts to adopt the rules. Id. § 207(b), (c).) In this case, Amtrak and the FRA agreed without an arbitrator on a set body of metrics and standards in May 2010, after which AAR (a group of freight operators) challenged the statute as unconstitutional.

This Court originally sided with the Department. It held that the PRIIA, first, did not violate the Due Process Clause's prohibition against "interested private parties['] . . . wielding regulatory authority" because Amtrak was not truly private and, second, did not constitute an unlawful delegation of legislative power to a non-governmental entity because the FRA jointly participated. See Ass'n of Am. R.Rs. v. Dep't of Transp. (AAR I), 865 F. Supp. 2d 22, 29, 32-33 (D.D.C. 2012). The D.C. Circuit reversed, declining to address the former due-process issue but holding on the latter that § 207 was in fact an improper delegation to a private actor. See Ass'n of Am. R.Rs. v. Dep't of Transp. (AAR II), 721 F.3d 666, 670 (D.C. Cir. 2013).

The Supreme Court then heard the case, ultimately vacating AAR II as relying on a "flawed premise." Dep't of Transp. v. Ass'n of Am. R.Rs. (AAR III), 135 S. Ct. 1225, 1233 (2015). It held that "Amtrak is a governmental entity, not a private one, for purposes of determining the constitutional issues presented in this case." Id. But it did not venture further. Still-uncharted issues included whether the Act violated due process by giving a for-profit corporation regulatory authority over its own industry and whether § 207(d) violated the Appointments Clause. Id. at 1234. The Supreme Court instructed that, "[o]n remand, the Court of Appeals" should address these questions after "identifying the issues that are properly preserved and before it." Id.

The D.C. Circuit did just that. Its ensuing opinion first concluded that "the freight operators' due process claim and arbitration claim are both properly presented for our review." Ass'n of Am. R.Rs. v. Dep't of Transp. (AAR IV), 821 F.3d 19, 27 (D.C. Cir. 2016). On that first count, the Circuit then held that "PRIIA violates due process" because it "gives a self-interested entity regulatory authority over its competitors." Id. As to the second issue, the opinion concluded that § 207(d) violated the Appointments Clause because the arbitrator would act as a "principal officer" who required appointment by the President and confirmation by the Senate, as opposed to mere selection by the Surface Transportation Board. Id. at 36.

## II.     Analysis

These long and winding tracks lead back to this Court's doorstep. The last appellate decision did not specify a remedy, so both sides now ask for the Court to execute the D.C. Circuit's mandate by entering judgment for Plaintiff. See Mot. at 5; Opp. at 3. They agree that the Court must declare § 207(d) void and unconstitutional and vacate the May 2010 metrics and standards. They dispute, however, whether the whole of § 207 must go as well.

One would think that AAR IV's discussion resolved the remedial question decisively. The Circuit framed its inquiry broadly, on several occasions, as whether the "PRIIA violates due process." Id. at 27; e.g., id. at 31 ("PRIIA only violates due process if Amtrak is (1) a self-interested entity (2) with regulatory authority over its competitors."), 34 ("Put simply, PRIIA . . . transgresses 'the very nature' of governmental function.'") (quoting Carter v. Carter Coal Co., 298 U.S. 238, 311 (1936)). After ten pages of discussion on § 207, the Court of Appeals held, "Because PRIIA endows Amtrak with regulatory authority over its competitors, that delegation violates due process." Id. at 34.

Defendant offers in response that severing the § 207(d) arbitration provision, which separately violates the Appointments Clause, will also remedy the Due Process Clause problems discussed by the Circuit.  See Mot. at 7.  As severance is the preferred remedy for constitutional flaws, DOT asks the Court to jettison § 207(d) and let the rest of the Act stand.  Id. at 8.

This request leans heavily on a section of AAR IV that analyzed "the Government's numerous counterarguments." 821 F.3d at 34.  Principally, the Department argued on appeal that, because "the federal government has considerable oversight and control over Amtrak," there was no due-process problem with the entity's regulating its competitors.  Id.  After dismissing this contention, the Circuit distinguished in a footnote several cases where the Supreme Court upheld joint public–private regulatory actions on the basis that, here, "the FRA's authority to hold the line against overreaching by Amtrak is undermined by the power of the arbitrator." Id. at 34 n.4 (citing Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 388, 399 (1940); Currin v. Wallace, 306 U.S. 1, 6, 15-16 (1939)).  Because the Court of Appeals premised its due-process holding (in part) on the presence of § 207(d), Defendant contends there would be no constitutional issue absent that clause.

That is a ticket this Court cannot punch.  The Department's reasoning stands AAR IV on its head.  Just because there certainly is a due-process violation with § 207(d) does not mean there is not a violation without it.  Nothing in the D.C. Circuit's opinion expresses this latter reading, and this Court refuses to place this footnote four in the constitutional-law pantheon.  Cf. United States v. Carolene Prods. Co., 304 U.S. 144, 152 n.4 (1938).

Whether the Circuit should have or could have crafted a narrower due-process holding centering on § 207(d) is, in fact, a question this Court cannot touch.  It must instead "give full effect to the mandate" from the Circuit.  Vendo Co. v. Lektro-Vend Corp., 434 U.S. 425, 428

(1978) (quoting In re Sanford Fork & Tool Co., 160 U.S. 247, 255 (1895)).  This Court "cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded."  In re Sanford, 160 U.S. at 255.  The D.C. Circuit, in addressing § 207(d), necessarily had the opportunity to find that the PRIIA violated due process only insofar as it incorporated that subsection.  The opinion likewise could have embraced the Department's counterargument or said more in its footnote four.  That it did not do so signals that the constitutional infection spread more broadly — at the very least, it forecloses this Court from repeating these inquiries.  See United States v. Ins. Co. of N. Am., 131 F.3d 1037, 1041 (D.C. Cir. 1997) (foreclosing on remand "issues that were decided either explicitly or by necessary implication").  On an issue the Court of Appeals duly considered, this Court will not propose a narrower possible holding than what it adopted; otherwise, AAR would be correct that this Court would essentially be "overrid[ing] the holding of the D.C. Circuit and transform[ing] AAR's hard-earned win into a loss."  Opp. at 2.

     Even if the Circuit had left open the question of whether there would be a due-process issue absent § 207(d), severance does not necessarily follow as the relief.  The severability inquiry starts with asking whether "it is evident that the Legislature would not have enacted those provisions which are within its power[] independently of that which is not."  New York v. United States, 505 U.S. 144, 186 (1992) (quoting Alaska Airlines, Inc. v. Brock, 480 U.S. 678, 684 (1987)).  But the Circuit separately made clear that, in this case, Congress should answer this question itself:

> Make no mistake; our decision today does not foreclose Congress from tapping into whatever creative spark spawned the Amtrak experiment in public–private enterprise.  But the Due Process Clause of the Fifth Amendment puts Congress to a choice: its

> chartered entities may <u>either</u> compete, as market participants, <u>or</u> regulate, as official bodies. After all, "[t]he difference between producing . . . and regulating . . . production is, of course, <u>fundamental</u>." To do both is an affront to "the very nature of things," especially due process.

<u>AAR IV</u>, 821 F.3d at 36 (quoting <u>Carter</u>, 298 U.S. at 311). In effect, by identifying the legislature as the proper actor, the Circuit directed that this Court have no further role in making repairs to the PRIIA.

### III.     Conclusion

For these reasons, the Court ORDERS that:

1. Defendant's Motion for Entry of Judgment is GRANTED IN PART and DENIED IN PART;

2. Judgment is ENTERED in favor of Plaintiff;

3. Section 207 of the Passenger Rail Investment and Improvement Act of 2008 is DECLARED void and unconstitutional; and

4. The Department of Transportation and Federal Railroad Administration's Metrics and Standards for Intercity Passenger Rail Service, Docket No. FRA-2009-0016 (effective May 12, 2010) are VACATED.

IT IS SO ORDERED.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: <u>March 23, 2017</u>